✓
_____ FILED      _____ ENTERED
_____ LOGGED    _____ RECEIVED

4:49 pm, Mar 13 2023

AT  BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Susan Ambridge Paris, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Baltimore Division, Baltimore, Maryland, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the FBI and have been since June 2016.  I am currently assigned to the Maryland Child Exploitation and Human Trafficking Task Force in the Baltimore Division of the FBI and have been assigned investigations concerning sexual exploitation of children and child pornography.  During my employment with the FBI, I have gained experience through training in seminars, classes, and daily work related to conducting these types of investigations.  In addition, I have also received training regarding the use of the Internet and digital communications as they pertain to federal investigations.  I have participated in the execution of numerous search warrants, some of which have involved child exploitation offenses. Many of the search warrants resulted in the seizure of computers, cell phones and/or "smart phones," magnetic storage media for computers, other electronic media, and other items evidencing violations of federal laws.  I have also participated in the execution of numerous search warrants for online accounts, such as email accounts, online storage accounts, and other online communication accounts related to child exploitation and/or child pornography.  In the course of my employment, I have observed and reviewed numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media and within online accounts.  I am an "investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7) who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Titles 18 and 21 of the United States Code.

2.      As a federal agent, I am authorized to investigate violations of laws of the United States and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

3.      This affidavit is made in support of an application for a warrant to search the following (hereinafter referred to as the "TARGET LOCATION"):

      a.      The premises of 1001 Cherry Hill Road, Apt A-3, Baltimore, MD 21225

4.       The TARGET LOCATION  is to be searched for evidence of violations of Title 18, United States Code, Section 2251(a) (sexual exploitation of children); Title 18, United States Code, Section 2252A(a)(2) (distribution and receipt of child pornography); and Title 18, United States Code, Section 2252A(a)(5)(B) (possession of child pornography) (collectively the "TARGET OFFENSES").

5.      The statements in this affidavit come from my personal observations, my training and experience, and information obtained from other FBI agents, police officers, witnesses, cooperating sources, records, and reports.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the TARGET OFFENSES are located in the TARGET LOCATION.

### SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND DISTRIBUTION OF CHILD PORNOGRAPHY

6.      Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view and receive images of

1:23-mj-00601-JMC

child pornography are often individuals who have a sexual interest in children and in images of children, and that there are certain characteristics common to such individuals, including the following:

a.      Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

b.      Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification.  Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c.      Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d.      Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area.  These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

e.      Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.  This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

f.      Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online

1:23-mj-00601-JMC

methods would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

       g.     Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

       7.     Based on my investigative experience related to computer and internet related

child pornography investigations, and the training and experience of other law enforcement

officers with whom I have had discussions, I have learned the following:

       a.     Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

       b.     The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

       c.     Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

       d.     Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another. Many people generally carry their smartphone on their person.

       e.     Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another

computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

   f. Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem.  Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

   g. The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.  Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others.  The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files.  The data is maintained on the servers of the providers and is occasionally retained by the providers after the user deletes the data from their account.

   h. In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

   i. Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt and possession of child pornography will be found in the TARGET LOCATIONS notwithstanding the passage of time.

   j. In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet.  Electronic files downloaded to a hard drive can be stored for years at little to no cost.  Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

   k. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data.  Therefore, deleted files, or remnants of deleted files, may reside in free space or

1:23-mj-00601-JMC

slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

l.      In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.  Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache.  The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

m.      The storage capacity of personal computers has increased dramatically over the last few years.  Common and commercially available hard drives are now capable of storing over 500 GB of data.  With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

n.      Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.  Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## **PROBABLE CAUSE**

A. <u>Background</u>

8.      On Thursday February 16, 2023, a Task Force Officer associated with the Washington Field Office of the Federal Bureau of Investigation was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C.  The UC entered a WICKR[1] online group the UC has been a member of for several months. This group has approximately 121 members and is a place where people meet, discuss, and trade sexually explicit images and videos of underage children and share links containing child pornography. A user using the screen name "tng6," was observed by the UC posting messages and videos within the private group chat.

---

[1] WICKR is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups. WICKR has end-to-end encryption.

9.      The UC observed tng6 respond to a message that was posted by another member of the group. The other member posted an image file depicting two minors in a swimming pool. Tng6 responded to this image by stating "sexy," followed by "You fucking them?" tng6 then stated, "Nice gotta post my stuff someday." Another member of the group encouraged tng6 to post his material, at which time tng6 posted a video file to the group. The video depicted an adult black male standing in front of a black infant, who was sitting in a baby seat. The male is masturbating his penis in front of the infant. A member of the group stated, "Hot. That you?" tng6 responded, "Yes." Exif data on this video shows a date of June 28, 2022.

10.      Shortly thereafter tng6 posted another message to the group, stating, "Shit any1 wanna meet in VA let me know." The UC initiated a private chat conversation with tng6. During the course of the chat, tng6 identified the infant as his daughter and stated that he would have access to her this weekend.

11.      While tng6 was communicating with the UC in the private chat, tng6 posted two additional videos to the group chat. The first video depicts a black male placing his penis in the buttocks of a prepubescent black minor. The minor is on a bed on their stomach and is naked from the waist down. The male ejaculates on the minor's buttocks and can be heard saying, "bust a nut on you." Another member of the group asked tng6 if that was him in the video to which tng6 responded with a devil emoji face and stated, "Niece that time." Exif data on this video shows a date of December 28, 2021.

12.       The second video depicts an adult black male inserting his finger of what appears to be his right hand inside the vagina of a prepubescent black female. Immediately after sending this video to the group, tng6 posted a message stating, ";) niece is so fun" and that he was "a bad daddy and uncle." Tng6 further stated to the group that he recorded this video for a friend last

weekend and that he had to ask her to send it back to him. Exif data on this video shows a date of January 26, 2022.

13.     During the course of the private chat, the UC informed tng6 that he was the father of a purported 8-year-old daughter.  The UC sent tng6 a few images of his purported daughter and stated that he shows her off on Facetime when the purported daughter is asleep. Tng6 told the UC that the child in the first video he posted was his daughter and that he "came on my niece." Tng6 stated that he did not have any more videos of his daughter "but maybe can make more this weekend and me too. They can't say much [devil emoji]." The UC sent tng6 his cell phone number and stated that he could show his purported daughter "live." Tng6 stated, "Sure that's hot" and sent the UC a text message from the phone number 443-527-2168.

14.     During the course of the chat, tng6 identified himself as Terry, a 25-year-old male. Tng6 asked the UC if he could FaceTime him. The UC initiated a video call with Tng6. The UC was able to see tng6's face in the video. The video call was less than five minutes long, as tng6 asked the UC if he could call him back to due to a maintenance man showing up at his residence. The UC was unable to record this video call.

    B.  Identification of tng6

15.     On February 16, 2023, an administrative subpoena was served on T-Mobile requesting subscriber information associated with telephone number 443-527-2168. On the same day, T-Mobile responded to the subpoena identifying the subscriber as RASHID LAMONT MCFADDEN (hereafter MCFADDEN) with a billing address of 3124 Brendan Avenue, Baltimore Maryland, 21213.

16.     Upon receipt of this information, FBI Washington personnel used available open source, commercial, and law enforcement sensitive databases to fully identify the suspected user

of the phone number as MCFADDEN (DOB: 04/28/1995; SSN: 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; Maryland's driver's license: M213730488325). The UC viewed MCFADDEN's driver's license image, which matched the person that the UC observed during the FaceTime video call

17.     MCFADDEN has an active arrest warrant (W506591150) issued by the Baltimore County Police Department related to pending charges of promoting/distributing child pornography and possessing child pornography. There is also a pending civil case against MCFADDEN in Baltimore County Circuit Court involving Paternity / Parentage between him and Angelique Lewis. This suit is related to their shared child.

C.   Arrest of MCFADDEN

18.     On February 17, 2023, FBI Washington, executed a federal search warrant from the United States District Court for the District of Columbia, on T-Mobile for the monitoring of global positioning system (GPS) information, cell site location data, and information for the cellular device associated with 443-527-2168, the number previously identified as associated with MCFADDEN. Information provided by T-Mobile showed the device associated with the telephone number is an Apple iPhone XR with international mobile subscriber identity (IMSI) 310260044023035 and international mobile equipment number (IMEI) 35683111-656213-1.

19.     The GPS information obtained from T-Mobile indicated MCFADDEN was located in the Cherry Hill area of Baltimore City, Maryland.

20.     Pursuant to their active arrest warrant, on February 17, 2023, Baltimore County Police utilized a Cell Site Simulator to conduct an exigent Direction Finding (DF) mission on the target device attributed to MCFADDEN.  Based on an analysis of cellular records and prospective geolocation estimates from the target device provider, the DF mission was conducted in the Cherry Hill community of Baltimore, Maryland.  The target device was contacted near the

1:23-mj-00601-JMC

intersection of Cherry Hill Rd and Round Rd.  Utilizing both the vehicle-mounted sensors and remote sensor, the DF was conducted to the apartment building at 1001 Cherry Hill Rd. Utilizing the remote sensor, it was determined that the target device was likely present in or immediately adjacent to Apartment A-3 or A-2.  A search of public records databases revealed an association between Apartment A-3 and an individual with the same last name as MCFADDEN.

21.     When members of the Baltimore County Police Department approached the TARGET LOCATION and knocked, the target device disconnected from the cell site simulator. After several minutes, MCFADDEN came to the door and was subsequently placed under arrest.

22.     Also present at the TARGET LOCATION was Angelique Lewis (hereafter Lewis) and their minor child. Lewis informed officers that when detectives knocked on the door that MCFADDEN looked out the peep hole in the door and began to pace back and forth inside the apartment. Lewis advised that she then observed MCFADDEN walk to the back bedroom of the apartment with his cellphone in his hand. Lewis advised that MCFADDEN was in the back bedroom for a short period of time and when he came back to the living room, he did not have his cellphone.

23.     A search incident to arrest of McFadden's person revealed a phone charger for an iPhone in his pants pocket. No cell phone was located on MCFADDEN's person. The target device did not reconnect while police were on scene, consistent with the device being powered off, being put into "Airplane Mode," or the battery being in a discharged state.

24.     MCFADDEN advised law enforcement that he had been staying at the TARGET LOCATION for one and a half to two weeks, and the apartment belongs to his cousin Tyrone McFadden and Tyrone's girlfriend Carrie Williams (hereafter Williams). Law enforcement spoke

to Williams via cellphone, and she advised that Rashid McFadden has been at the location for about two weeks.

25.    On February 18, 2023, a follow-up interview was conducted with Lewis. During that interview Lewis stated the following: MCFADDEN's telephone number is 443-527-2168. On February 17, 2023, prior to law enforcement knocking on the door of TARGET LOCATION, MCFADDEN was using a black cell phone with no case while inside the TARGET LOCATION. MCFADDEN took that cell phone to the bathroom. While he was in the bathroom, law enforcement knocked on the door, and Lewis went to tell MCFADDEN someone was at the door. MCFADDEN came out of the bathroom to see who was at the door and then started pacing and said it was the police. Lewis told MCFADDEN to open the door and MCFADDEN told Lewis to take the baby to the back bedroom. Lewis was unsure what MCFADDEN did with the phone he was using. Lewis knew MCFADDEN to previously have an Apple iPhone but was unsure what phone he was currently using.

## SUMMARY

26.    Based upon the above, I believe that the Apple iPhone XR associated with telephone number 443-527-2168, used by MCFADDEN is located at the  TARGET LOCATION due to the following: (1) GPS information provided by T-Mobile indicated MCFADDEN was located in the Cherry Hill area of Baltimore; (2) the cell site simulator used by Baltimore County Police indicated the cellular phone was used in the vicinity of the TARGET LOCATION, specifically in either apartment A-2 or A-3; (3) when law enforcement knocked on the door to the TARGET LOCATION, the target device disconnected from the cell site simulator and did not reconnect while law enforcement was on scene; (4) according to Lewis, who was at the TARGET LOCATION with MCFADDEN, MCFADDEN was using a cellular phone inside the TARGET

LOCATION just prior to law enforcement contact; and (5) no cellular phone was found on MCFADDEN's person when he was arrested.

27.     Based on my training, knowledge and experience, individuals who have a sexual interest in children and who produce, distribute, receive and possess child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment.  These collections are often maintained for many years – even decades.  These individuals go to great lengths to conceal and protect their collection from discovery, theft, and damage.  Individuals who collect child pornography prefer not to be without their child pornography for any prolonged time period and therefore they tend to keep their collection where they can easily access it such as in their residence, vehicles and place of employment, as well as on their person.  Individuals who collect child pornography also tend to keep their collection on multiple devices, many of which are portable such as a smartphone, laptop computer, and external storage devices, such as flash drives, external hard drives, and other storage media.  In my investigative experience, as well as the documented experience of other investigators, these devices are often kept in the individuals' homes, vehicles, place of employment and on their person.

## **<u>CONCLUSION</u>**

28.     Based on the foregoing information, I have probable cause to believe that contraband, evidence, fruits, and instrumentalities of the TARGET OFFENSES as set forth herein and in Attachment B are currently contained in the TARGET LOCATION, more fully described in Attachment A.  I therefore respectfully request that search warrants be issued authorizing the search of the TAGET LOCATION described in Attachment A for the items described in Attachment B and authorizing the seizure of any such items found therein.

29.     Due to the likelihood that the cellular phone used by MCFADDEN has been powered off, MCFADDEN no longer being present, and to eliminate the need to seize all electronic devices found inside the TARGET LOCATION which could belong to other individuals, I respectfully request that members of the law enforcement team be allowed to power on any cellular phone found at the TARGET LOCATION so that a phone call can be placed to 443-527-2168, the number associated with MCFADDEN.

_____
Special Agent Susan Ambridge Paris
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and Fed. R. Crim. P. 41(d)(3) this ___20th___ day of February, 2023.

_____
HONORABLE J. MARK COULSON
CHIEF UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

DESCRIPTION OF RESIDENTIAL PREMISES TO BE SEARCHED

1001 Cherry Hill Rd, Apt A-3, Baltimore, Maryland  21225 (the TARGET LOCATION ).

The TARGET LOCATION to be searched is a one bedroom, one bathroom apartment. On the

exterior of the building "1001 Cherry Hill Road" is clearly displayed. There is a red front door to

the apartment and the number "1001A-3" is clearly displayed on the front door.  The photographs

below depict the TARGET LOCATION.




## **ATTACHMENT B**

LIST OF ITEMS TO BE SEIZED AND SEARCHED

1001 Cherry Hill Road, Apt A-3, Baltimore, MD 21225:

1.      The black cellular phone associated with telephone number 443-527-2168.